**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STEVEN J. MAKOUL, | ) | |
|     Plaintiff, | ) | No. 12 C 1240 |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| THE PRUDENTIAL INSURANCE | ) | |
| COMPANY OF AMERICA and PEAPOD | ) | |
| LLC FLEXIBLE BENEFIT PLAN, | ) | |
|     Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Peapod, an online grocery shopping and delivery service, employed Steven Makoul as a senior manager of web design until he ceased working due to physical and psychiatric impairments. Makoul received long term disability ("LTD") benefits from November 15, 2007 to March 31, 2010, under a group disability insurance policy sponsored by Peapod that was underwritten and administered by The Prudential Insurance Company of America. After Prudential terminated his LTD benefits, Makoul filed this action seeking LTD benefits from April 1, 2010, to the present.

Prudential then filed a counterclaim based on Makoul's receipt of Social Security disability benefits ("SSDB"). According to Prudential, Peapod's Plan coordinates LTD benefits with SSDB (*i.e.*, SSDB are subtracted from LTD benefits payable under Peapod's plan). Prudential asserts that Makoul double-dipped by receiving 100% of the LTD benefits payable under Peapod's plan plus SSDB, and thus must reimburse Peapod's plan for its overpayments. Makoul's motion to dismiss Prudential's counterclaim is before the court. For the following reasons, the motion is denied.

## I. BACKGROUND[1]

**A.   Peapod's Plan**

Peapod, Inc. sponsors a plan which provides, among other things, LTD benefits. Amended Complaint at Ex. A (Plan). Prudential underwrites and administers Peapod's plan, and pays LTD benefits when it determines that a plan participant has satisfied the plan's definition of disability. *Id*. at 20. The plan includes a 24-month cap on benefits payable to participants with "[d]isabilities due to a sickness or injury which, as determined by Prudential, are primarily based on self-reported symptoms . . ." or "[d]isabilities which, as determined by Prudential are due in whole or part to mental illness . . ." *Id*. at 30. The plan specifies that depression is an example of mental illness and pain is an example of a self-reported symptom. *Id*. at 30-31. It also excludes coverage for certain types of disabilities, including those resulting from a participant's "intentionally self inflicted injuries." *Id*. at 31.

If participants qualify for LTD benefits, their benefits are reduced by "deductible sources of income." *Id*. This includes, among other things, the gross amount that a participant, the participant's spouse, and the participant's children "receive or are entitled to receive as loss of time disability payments because of [the participant's] disability under . . . the United States Social Security Act." *Id*. at 25. The plan also allows Prudential to estimate a participant's

---

[1] The facts are drawn from the amended complaint and counterclaim, as well as documents attached to or referenced by the complaint and counterclaim. *See Citadel Group Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012) (court may consider documents referenced in a complaint); *EBI Holdings, Inc. v. Butler*, No. 07 C 3259, 2009 WL 400640, at *2 (C.D. Ill. Feb. 17, 2009) (court may consider documents referenced in a counterclaim). They are accepted as true for the purposes of Prudential's motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

entitlement to SSDB and "reduce [the participant's] payment by the estimated amount if such benefits have not been awarded." *Id*. at 28.

A participant may avoid a reduced LTD benefit amount based on the receipt of "deductible sources of income" if he "sign[s] Prudential's Reimbursement Agreement form" which "states that [the participant] promise[s] to pay [Prudential] any overpayment caused by an award." *Id*. The plan also includes a section entitled "What Happens If Prudential Overpays Your Claim?" *Id*. at 41. In that section, the plan states that "Prudential has the right to recover any overpayments due to . . . [a participant's] receipt of deductible sources of income" and that "[the participant] must reimburse [Prudential] in full." *Id*.

**B.     Makoul's LTD Claim**

Peapod employed Makoul until he stopped working on May 18, 2007, due to physical and psychiatric impairments. Prudential approved his claim for LTD benefits effective November 15, 2007, and awarded him $5,035.25/month.

On March 29, 2008, Makoul signed a Reimbursement Agreement which stated "that benefits payable under this Plan are to be reduced by any benefits under the Social Security Act that I or members of my family receive or would be entitled to receive as a result of my disability, for that same period." Counterclaim at ¶ 12. As part of the Reimbursement Agreement, he also "agree[d] to repay Prudential immediately the amount paid to me under this Agreement in excess of the amount to which I would have been entitled under the terms of the Plan" in the event that "any benefits under the Social Security Act are awarded retroactively." *Id*. at ¶ 13. Had Makoul not signed the Reimbursement Agreement, Prudential would have immediately reduced his LTD benefits by the amount of his actual or estimated SSDB payments.

Prudential paid LTD benefits to Makoul from November 15, 2007 to March 31, 2010. It terminated his benefits after determining that his condition was based on mental illness and self-reported chronic pain and thus was subject to the 24-month cap. It also concluded that Makoul could not receive benefits for physical impairments caused by attempts to commit suicide as the resulting injuries were self-inflicted. Makoul disputes that his impairments were subject to the 24-month cap or resulted from a self-inflicted injury. Makoul appealed but Prudential upheld its termination of benefits.

**C.     Makoul's SSDB Claim**

On January 26, 2011, a Social Security Administrative Law Judge ("ALJ") issued a decision awarding SSDB to Makoul based largely on Makoul's psychiatric condition. The ALJ also found that Makoul was physically impaired due to unsuccessful suicide attempts. Pursuant to the ALJ's order, Makoul received $2,019.00/month beginning February 1, 2008. As noted above, this overlapped partially with the period of time during which Makoul received benefits under Peapod's plan. Makoul received both SSDB benefits and unreduced LTD benefits from February 1, 2008, through March 31, 2010. Prudential also contends that Makoul qualified for family SSDB as he has two minor children. It seeks over $70,000 from Makoul under the "deductible sources of income" clause based on his receipt of SSDB and his receipt of family SSDB (or his ability to receive these benefits, as Prudential does not know if Makoul applied for and received family benefits).

## II. LEGAL STANDARD

Motions to dismiss a counterclaim are evaluated using the familiar standard used for motions to dismiss a complaint. *See McLaughlin v. Chi. Transit Auth.*, 243 F. Supp. 2d 778, 779

(N.D. Ill. 2003). Under this standard, the court takes all facts alleged in the complaint as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). A motion to dismiss should be granted if the plaintiff fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### III. ANALYSIS

Section 502(a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") provides that, "(a) [a] civil action may be brought . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Makoul seeks to dismiss Prudential's counterclaim, asserting it is barred by
§ 502(a)(3) as it seeks legal rather than equitable relief. Alternatively, he argues that even if Prudential may assert a counterclaim based on the overpayment of LTD benefits, Prudential's claim fails as it has unclean hands since it seeks reimbursement based on Makoul's receipt of SSDB but refuses to credit the ALJ's finding that he is disabled.

**A.      Legal vs. Equitable Relief**

Makoul's § 502(a)(3) argument is based on his contention that Prudential cannot recover the overpayments because ERISA permits it to recover only identifiable funds. He reasons that because the SSDB payments were mixed in with his other assets, Prudential's attempt to assert a

lien over those payments is improper because such a lien would be legal, not equitable. In support, he directs the court's attention to the Supreme Court's decision in *Sereboff v. Mid. Atl. Med. Servs.*, 547 U.S. 356 (2006). However, *Sereboff* and Seventh Circuit precedent interpreting that case do not support Makoul's position.

For example, in *Gutta v. Std. Select Trust Ins. Plans*, 530 F.3d 614 (7th Cir. 2008), the insurer determined that a plan participant was not entitled to benefits. The plan participant sued the insurer, who then asserted a counterclaim seeking repayment of over $70,000 in disability payments based on the plan participant's receipt of benefits under a different insurance policy. When considering the counterclaim's viability, the Seventh Circuit discussed *Sereboff* at length, stating:

> The case of *Sereboff v. Mid Atl. Med. Servs.*, 547 U.S. 356 (2006), controls our analysis. Marlene Sereboff and her husband were injured in a car accident, and her employer paid their medical expenses pursuant to an ERISA plan. *Id*. at 1872. The plan contained an "'Act of Third Parties'" provision, which "require[d] a beneficiary who 'receives benefits' under the plan for such injuries to 'reimburse [Mid Atlantic]' for those benefits from '[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise).'" *Id*. (altered by the Court). The Sereboffs did in fact recover tort damages from a third party, and Mid Atlantic pursued reimbursement of the benefits it paid the Sereboffs, bringing an action under 29 U.S.C. § 1132(a)(3). *Id*. at 1873. The question before the Court was whether the relief Mid Atlantic sought was truly "equitable" for purposes of § 1132(a)(3). The Court held that it was and that the reimbursement provision in the plan created an "equitable lien by agreement." *Id*. at 1877. For the latter kind of lien (in contrast to "an equitable lien sought as a matter of restitution"), strict tracing of the funds to be recovered was not required. *Id*. at 1875. The Court noted also that "the fund over which a lien is asserted need not be in existence when the contract containing the lien provision is executed." *Id*. at 1876.

*Id*. at 620 (quoting and citing *Sereboff*, 547 U.S. at 1872-77).

The Seventh Circuit noted that the plan under which Gutta sought benefits included an offset for "Income From Other Sources" which reduced the LTD benefits by income received from other group insurance sources for the same monthly period. *Id*. at 620-21. It then held:

> Standard's reimbursement provision is indistinguishable from the reimbursement provision in *Sereboff*, 126 S.Ct. at 1872. Here, too, there is an "equitable lien by agreement" between Standard and Gutta, and that lien is not dependent on the ability to trace particular funds. Standard may bring its counterclaim under 29 U.S.C. § 1132(a)(3) even if the benefits it paid Gutta are not specifically traceable to Gutta's current assets because of commingling or dissipation.

*Id*. at 621.

*Sereboff*, as well as the Seventh Circuit's interpretation of that opinion in *Gutta*, both doom Makoul's legal vs. equitable argument. *See also Northcutt v. GM Hourly-Rate Employee Pension Plan*, 467 F.3d 1031 (7th Cir. 2006) (rejecting legal vs. equitable argument under *Sereboff*); *Rogozinski v. Hartford Life and Acc. Ins. Co.*, No. 04 C 6947, 2007 WL 2409810, at *8 (N.D. Ill. Aug. 21, 2007) (Gottschall, J.) ("*Sereboff* compels [the plaintiff] to repay the $48,000 in benefit payments he received from Hartford that are duplicative of the amounts he received from Prudential because the Policy created an equitable lien by agreement the moment he received those funds from Prudential."). Moreover, to the extent that Makoul contends that the Seventh Circuit failed to analyze *Sereboff* properly and that out-of-circuit interpretations of *Sereboff* should control, he is directing his arguments to the wrong audience.

Makoul's fallback argument is that *Sereboff* and its progeny are distinguishable because they involved income received from other insurance, as opposed to SSDB. Makoul correctly observes that money received under the Social Security Act "shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under

-7-

this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankrupty or insolvency law." 42 U.S.C.A. § 407(a).

His emphasis on protections afforded to SSDB, however, fails as Prudential is seeking to recover overpayments it made due to Makoul's receipt of SSDB. It is not attempting to force Makoul to disgorge SSDB (to the extent that these monies have not been spent). *See Williams v. Group Long Term Disability Ins.*, No. 07 C 6022, 2008 WL 2788615, at *2 (N.D. Ill. July 17, 2008) (insurer could "recover the overpayment of funds plaintiff received as a result of collecting both Social Security and Veterans benefits at the same time he collected long-term disability benefits under the Plan" as the insurer sought reimbursement of funds it paid as opposed to the plaintiff's Social Security or Veterans benefits).

Finally, Makoul contends that even if he must repay Prudential, he may be required to do so only as a setoff against any money that Prudential owes him. In other words, according to Makoul, he is the aggrieved party because Prudential denied him benefits, so unless and until he wins and Prudential is ordered to pay benefits, he need not repay Prudential. The Reimbursement Agreement Makoul signed dooms his attempt to characterize his repayment obligation as a setoff. Makoul agreed "that benefits payable under this Plan are to be reduced by any benefits under the Social Security Act that I or members of my family receive or would be entitled to receive as a result of my disability, for that same period." Counterclaim at ¶ 12.

If Makoul had refused to sign the Reimbursement Agreement, Prudential would have reduced his LTD benefits by the amount of his SSDB payments. However, he signed the Reimbursement Agreement and thus received the benefits that are the subject of Prudential's counterclaim. He is, therefore, bound by the plain language of the Reimbursement Agreement.

*See Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012) (upholding offset of SSDB received by the disabled employee's children based on unambiguous plan language and noting that "[t]he interpretation of language in a plan governed by ERISA is controlled by federal common law, which draws on general principles of contract interpretation, at least to the extent that those principles are consistent with ERISA."). Accordingly, all of Makoul's arguments based on the differences between legal and equitable relief are unavailing.

**B.     The Unclean Hands Doctrine**

As a fallback argument, Makoul asserts that even if Prudential's counterclaim properly seeks equitable relief under § 502(a)(3), it is nevertheless barred by the equitable defense of unclean hands because Prudential seeks to benefit from Makoul's receipt of SSDB but terminated his benefits despite the ALJ's disability determination. "The 'unclean hands' doctrine allows a court to deny equitable relief to a party who has engaged in unlawful or inequitable conduct in connection with the matter from which he or she seeks relief." *Young v. Verizon's Bell Atl. Cash Balance Plan*, 667 F. Supp. 2d 850, 905 (N.D. Ill. 2009). Wrongful conduct includes acts that are "inequitable, unfair, dishonest, fraudulent, unconscionable, or in bad faith." *Id*. (citing 27A Am. Jur. 2d Equity § 100 (2d ed. 2009)).

Consideration of this argument is premature. Makoul assumes that Prudential's disability determination was wrong because it conflicts with the ALJ's decision. Prudential, on the other hand, has proffered reasons why Makoul could be eligible to receive SSDB benefits despite his inability to qualify for LTD benefits under Peapod's plan. This issue is not presently before the court, which declines to review Prudential's decision based on the present record and in the context of a motion to dismiss a counterclaim. However, if Prudential's denial of benefits is

ultimately upheld, Makoul's unclean hands claim will necessarily fail.  The parties' arguments about the interplay between SSDB and Prudential's denial of benefits, therefore, are not germane to Makoul's motion to dismiss.

In any event, the Supreme Court recently held that, "in an action brought under § 502(a)(3) based on an equitable lien by agreement, the terms of the ERISA plan govern.  Neither general principles of unjust enrichment nor specific doctrines reflecting those principles — such as the double-recovery or common-fund rules — can override the applicable contract."  *US Airways, Inc. v. McCutchen*, — U.S. —, —, 133 S.Ct. 1537, 1551 (2013).  One of this court's colleagues has recently held that under *McCutchen*, the equitable doctrine of unclean hands is similar to the equitable doctrine of unjust enrichment and thus cannot be used to defend against an overpayment counterclaim based on plan language.  *O'Brien-Shure v. U.S. Labs., Inc. Health & Welfare Ben. Plan*, No. 12 C 6101, 2013 WL 3321569, at *4 (N.D. Ill. July 1, 2013) (citing *Admin. Comm. of Wal–Mart Stores, Inc. Assocs. Health & Welfare Plan v. Varco*, 338 F.3d 680, 691-92 (7th Cir. 2003) (in action under § 502(a)(3), "it is inappropriate to fashion a common law rule that would override the express terms of a private plan unless the overridden plan provision conflicts with statutory provisions or other policies underlying ERISA").

This court agrees that the combination of the language of the Reimbursement Agreement and *McCutchen* is fatal to Makoul's unclean hands argument.  The Supreme Court has held that reimbursement provisions like the one Makoul signed are "the modern-day equivalent of an 'equitable lien by agreement'" which "arises from and serves to carry out a contract's provisions."  *Id.* at 1546.  It also has found that equitable liens by agreement are enforceable because they simply require parties to abide by their mutual promises.  *Id.*  Accordingly,

Makoul's motion to dismiss Prudential's counterclaim based on the doctrine of unclean hands is denied.

### IV. CONCLUSION

For the reasons stated above, Makoul's motion to dismiss Prudential's counterclaim is denied.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 25, 2013